**KUEHN et al. v. KUEHN.**    **(No. 339—3706.)**

(Commission of Appeals of Texas, Section A.
June 24, 1922.)

**1. Judgment ⟊572(2)—Order sustaining exception to petition without dismissing case held not res judicata in subsequent action.**

Order sustaining exception to petition without dismissing the case, notwithstanding recital in order that plaintiff refused to amend, *held* not res judicata in subsequent action, since, in the absence of a judgment of dismissal, there was no final judgment.

**2. Dismissal and nonsuit ⟊10—Court, having sustained exception to petition without dismissing, was authorized at subsequent term to permit plaintiff to take a nonsuit.**

Where court sustained exception to petition, but did not dismiss action, it was authorized at a subsequent term of court to permit plaintiff to take a nonsuit.

**3. Lis pendens ⟊13—Mere pendency of suit did not charge third party, to whom defendants sold land, with notice that plaintiff claimed interest therein.**

Mere pendency of suit to set aside conveyance did not operate as notice that plaintiff claimed equitable interest in the land to third party, to whom defendant sold the land, under the lis pendens statute (Rev. St. arts. 6838, 6839).

**4. Husband and wife ⟊129(3)—When wife, suing to set aside conveyance to husband under separation agreement, estopped to assert equitable interest in property as against husband's creditor, who purchased at execution sale.**

Divorced wife, suing to set aside a separation agreement and to cancel deed to husband executed pursuant thereto, will be estopped from asserting any equitable interest in the land as against husband's creditor, who purchased the land at an execution sale, if the creditor extended credit to the husband under the belief that the property belonged exclusively to him.

**5. Husband and wife ⟊133½—Whether husband's creditor purchasing land at execution sale, extended credit to husband under belief that property belonged to him exclusively, held for the jury.**

In divorced wife's action to set aside separation agreement and to cancel deed executed pursuant thereto against the husband and his creditor, who purchased the land at execution sale, the question of whether the creditor extended credit to the husband under the belief that the property belonged exclusively to the husband *held* for the jury.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by Emma Kuehn against R. W. Kuehn and another. Judgment for defendants was reversed, and the cause remanded, by the Court of Civil Appeals (232 S. W.

918), and defendants bring error. Judgment of Court of Civil Appeals affirmed.

Ocie Speer and Jno. W. Eshes, both of Fort Worth, Walters & Baker, of San Saba, and Flack & Flack, of Menard, for plaintiffs in error.

Burney Braly, of Fort Worth, and Wilson & Johnson, of San Saba, for defendant in error.

SPENCER, P. J. This action was filed by defendant in error, Mrs. Emma Kuehn, on the 23d day of September, A. D. 1918, against plaintiffs in error, R. W. Kuehn and the North Texas Trust Company, to cancel and set aside a separation agreement between her and R. W. Kuehn, executed by them on July 28, 1915, and to cancel and set aside a deed of conveyance executed by her in compliance with this separation agreement.

She alleged in substance that she was married to R. W. Kuehn in the year 1885, and that the relationship of husband and wife continued until a decree of divorce was entered in the district court of San Saba county on November 17, 1915; that during the marital relation they accumulated community property, which at the date of their separation in July, 1915, was of the net value of $67,780. She also charged that, at the time of and prior to the execution of the separation agreement, J. E. Odiorne, acting as the agent of R. W. Kuehn, represented to her that her interest in the community estate would not exceed $10,000, and by these and other misrepresentations induced her to accept $10,000 in settlement of her rights therein, and in consideration thereof conveyed to him all her interest in the community estate, which includes the land in controversy; that the North Texas Trust Company obtained a judgment against R. W. Kuehn and J. E. Odiorne in Tarrant county, Tex., and fixed and foreclosed attachment liens on the community land, and bought it in at its own foreclosure sales, obtaining sheriff's deeds therefor; that it did not pay a valuable consideration for the land, but merely credited its bids on the judgment which it held; that at the time it had knowledge and notice of her equity in the land, and that the title acquired by it was subordinate to her equitable title and interest therein.

The Trust Company, in addition to a general demurrer and general denial, answered that defendant in error had on 19th day of July, A. D. 1916, filed a suit in the district court of San Saba county, numbered 2060 on the dockets of that court, seeking to set aside the separation agreement, and that a final judgment adverse to her had been entered, which judgment is pleaded in bar of the present action. It also pleaded that it had no knowledge, actual or constructive,

that she had or was claiming any interest in the land, and that as she had conveyed the lands to R. W. Kuehn, and that as it in reliance upon this deed of conveyance had extended him credit to the extent of $64,000, and had fixed and foreclosed its attachment lien and purchased the lands at the foreclosure sales, in good faith and for a valuable consideration, that she was estopped to assert any claim thereto or interest therein.

Plaintiff in error Kuehn adopted the answers of the Trust · Company, except its pleas of innocent purchaser and estoppel.

The court peremptorily instructed the jury to return a verdict for R. W. Kuehn and the Trust Company upon the grounds: (1) That the judgment in cause No. 2060 is res adjudicata of the matters litigated in this suit; (2) that defendant in error is estopped as to the Trust Company, by reason of executing the instrument and deed of conveyance placing the title in R. W. Kuehn, to asset an equitable interest in the land; (3) that there was no evidence of fraudulent statements inducing defendant in error to execute the instrument and deed of conveyance, and; (4) that there was no evidence that Odiorne, who procured the execution of the instruments, was the agent of R. W. Kuehn.

In cause No. 2060, the court made the following order on its docket:

"Defendant's special exception No. 1 sustained, and plaintiff [defendant in error here] excepts to ruling of the court and refuses to amend her petition, but gives notice of appeal."

At a subsequent term of court permission was granted to defendant in error to take a nonsuit. Plaintiffs in error contend that the latter action was unauthorized, because the previous order was a final judgment.

[1] The Court of Civil Appeals correctly held that the action of the court in cause No. 2060 was not a final judgment, and therefore not res adjudicata in this suit. It is observed that the court, in disposing of the exception, took no action with reference to the dismissal of the case. It is the unquestioned rule in this state that, in order to constitute a final judgment, there must be an express adjudication to that effect. It is not sufficient that the court make a ruling which should logically lead to a final disposition of it, but the consequences of the ruling to the parties must also be declared. It is clear that this order of the court lacks this one essential to make it final. It did not in fact do anything more than to sustain the exception. A failure to dispose of the cause by dismissing it was fatal, in so far as the finality of the judgment was concerned. Land & Loan Co. v. Winter, 93 Tex. 560, 57 S. W. 39; Dixon et al. v. Sanderson et al. (Tex. Sup.) 6 S. W. 831.

[2] All the cases cited and relied upon by plaintiffs in error were cases in which final judgments were actually rendered. In this case there was no final judgment. The ruling of the court would lead logically to the rendition of a final judgment of dismissal, but this is not sufficient. There must be a judgment of dismissal before it can be said that there is a final judgment. So long as there was no final judgment, the cause was pending before the court, and it was within the power of the court to permit defendant in error to amend or to take a nonsuit. This power continued until there was such an amendment or dismissal. Because the court's order recited that she refused to amend does not change an interlocutory order into a final judgment. The refusal to amend authorized the court to dismiss the action; but it did not, in the absence of such an order by the court, operate as a matter of law as a dismissal thereof. None of the authorities relied upon support, or tend to support, a contrary rule.

The case of Ætna Ins. Co. v. Dancer (Tex. Com. App.) 215 S. W. 962, is relied upon as supporting the contention that the granting of a nonsuit was void. That decision very properly holds that, where a final judgment has been rendered and not set aside during the term, the court has no power to set it aside at a subsequent term. The very broad distinction between that case and this one is that there a final judgment was rendered, which, of course, precluded the court from setting it aside at a subsequent term, while in this case there was no final judgment rendered in the first instance.

Dixon v. Sanderson, supra, decides the precise question at issue. Mr Chief Justice Willie, in disposing of the case, said:

"Upon examining the record in this case, we find that no final judgment was rendered in the court below. There is an order in the transcript sustaining a demurrer to the plaintiff's amended petition, and a recital that to this ruling the plaintiff excepted, and gave notice of an appeal to the supreme court. But this did not necessarily dispose of the case. No recovery was had for either party, and what the adjudication of the court was as to the subject-matter of the suit does not appear. For want of a final judgment, the appeal must be dismissed; and it is so ordered."

We have inspected the original papers on file in Dixon v. Sanderson, and find that in that case the plaintiff refused, as in this case, to amend her pleadings.

The question then arises as to whether the Trust Company is in position to urge that it is a bona fide purchaser, or that defendant in error is estopped under the facts. The Court of Civil Appeals held that, when the attachment lien was fixed, the rule of lis pendens was notice to the Trust Company, and therefore it cannot claim to occupy the attitude of an innocent holder without notice.

There is in the record no evidence that a

lis pendens notice as to cause No. 2060 was ever filed in the county where the land was situated, or elsewhere; nor is there any evidence that the agents or representatives of the Trust Company had notice of the pendency of that suit. On the other hand, its representatives who handled the loans testified positively that they had no information concerning cause No. 2060 prior to or at the time of their negotiations with Kuehn, and did not learn of it until after the purchase of the land at the foreclosure sale.

[3] The pendency of the suit would have, in the absence of our lis pendens statute (articles 6838,6839), operated as notice to plaintiff in error; but the common-law rule is abrogated by the statute, and the mere pendency of the suit was ineffectual to charge it with notice of defendant in error's interest in the land, if any she had. Burke-Simmons Co. v. Konz (Tex. Civ. App.) 178 S. W. 587 (writ of error denied); Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447.

Prior to the execution and recording of the deed of conveyance from defendant in error to plaintiff in error, the Trust Company had made several loans to R. W. Kuehn, secured in each instance by a chattel mortgage on cattle. The loans were renewed from time to time. On December 12, 1916, a renewal note in the sum of $45,000 was executed, and on December 23, 1916, another renewal note for $17,400 was executed. The deed of conveyance from Mrs. Kuehn to R. W. Kuehn was executed on November 30, 1915, and recorded December 30, 1915. The divorce was granted on November 17, 1915. The president of the Trust Company testified that he took no mortgages on the real estate in the name of R. W. Kuehn, because he considered the collateral taken. in connection with the financial responsibility of the makers of the notes, sufficient protection. He testified that the title to the lands was not examined in connection with the loans made to Kuehn, and that he understood Kuehn was a single man.

The Trust Company sued the makers in the district court of Tarrant county, Tex., on the two notes referred to, and in that suit attachment liens were fixed and foreclosed on the lands in controversy, and afterwards sold at execution sales and purchased by the Trust Company, and the amount of its bid credited on the judgment obtained in the suit.

[4, 5] As to whether Mrs. Kuehn is estopped as against the Trust Company to assert any equitable interest she may have in the land depends upon whether credit was extended to R. W. Kuehn under the belief that the property belonged exclusively to the latter. This is essentially a jury question. It would be improper, in view of another trial, to comment upon the evidence, further

than to say that there is sufficient evidence to take it to the jury.

As to the other issues presented—that is, that there was no evidence of fraud, and that Odiorne was not the agent of plaintiff in error—the Court of Civil Appeals correctly held, we think, that there was sufficient evidence to carry these issues to the jury.

We recommend, therefore, that the judgment of the Court of Civil Appeals, in reversing and remanding the case, be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.